**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MERRIGO LIFE LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, and UNINCORPORATED ASSOCIATES IDENTIFIED ON SCHEDULE "A",<br><br>Defendants. | ) | 26 C 2084 |

# MEMORANDUM OPINION AND ORDER

**CHARLES P. KOCORAS, District Judge:**

Plaintiff Merrigo Life LLC ("Merrigo") brings this action for violations of the Lanham Act, 15 U.S.C. § 1114, *et seq.* and the Copyright Act17 U.S.C. § 101 *et seq.* Defendant ZhenZhousDuoJingXin-XiKeJiYonGongSi ("OtGalk") moves to dissolve the preliminary injunction entered against it and dismiss for failure to state a claim. For the reasons explained below, the Court denies OtGalk's motion to dissolve the preliminary injunction and denies OtGalk's motion to dismiss.

## BACKGROUND

Merrigo is engaged in the creation, marketing, and sale of nature-inspired home décor products, including distinctive pillows. Merrigo owns U.S. Trademark Reg. Nos. 6,965,921 ("'921 Mark") and 7,969,037 ("'031 Mark") for the typed word mark

SUCCULENT (together, the "Succulent Marks").[1] The Succulent Marks are for plush decorative accent throw pillows. Merrigo also owns the federal copyright registration for its sculptural plush cushion work entitled "Succulent Flower Plush Cushion," Registration No. VA 2-167-392, dated April 19, 2019 (the "Copyrighted Work")[2]:



Dkt. # 1-3, at 2–3.

On April 9, 2025, Merrigo filed an action ("First Action")[3] against OtGalk (and others) under the Lanham Act for trademark infringement and counterfeiting (15 U.S.C. § 1114) and false designation of origin (15 U.S.C. § 1125(a)). Judge Ellis presided over the case. Merrigo's claims were based on the '921 Mark and involved six of OtGalk's online listings. The parties resolved the First Action through a settlement agreement, and Merrigo dismissed its claims against OtGalk with prejudice on June 25, 2025.

[1] The '921 Mark was registered on the Supplemental Register, the secondary register maintained by the U.S. Patent & Trademark Office ("USPTO"), on January 24, 2023, and the '031 Mark was registered on the USPTO's Principal Register on September 30, 2025.

[2] The original owner of the Copyright Registration executed a Copyright Assignment Agreement on April 21, 2022, selling, assigning, and conveying to Merrigo the whole and complete right, title, and interest in and to the Succulent Flower Plush Cushion and the copyrights in that work.

[3] *Merrigo Life LLC v. The Individuals, et al.*, No. 1:25-cv-03803 (N.D. Ill.).

However, on November 12, 2025, Merrigo filed a motion in the First Action to enforce the parties' settlement agreement and for entry of judgment for liquidated damages. In the motion, Merrigo reported that it learned OtGalk continued to sell infringing products in violation of the settlement agreement.[4] Judge Ellis granted the motion on November 20, 2025, and awarded Merrigo the contractually agreed-upon $25,000 in liquidated damages. The First Action was closed on January 5, 2026.

On February 24, 2026, Merrigo filed the instant action against OtGalk (and others) under the Lanham Act for trademark infringement and counterfeiting and false designation of origin, and the Copyright Act for copyright infringement. Merrigo's claims in this case are based on the Succulent Marks and the Copyrighted Work. This action accuses a set of nine online listings by OtGalk, which are different from the six at issue in the First Action.

The Court granted Merrigo's *ex parte* motion for a temporary restraining order ("TRO") on March 2, 2026. After one extension of the TRO, a preliminary injunction order was subsequently entered on April 21, 2026. OtGalk filed its appearance on May 4, 2026, and now moves to dissolve the preliminary injunction and dismiss all claims against it under Federal Rule of Civil Procedure 12(b)(6).

---

[4] Merrigo says the motion was based on "October 30, 2025 test purchases and alleged continued infringement." Dkt. # 49, at 4.

## DISCUSSION

### I. Motion to Dissolve the Preliminary Injunction

A preliminary injunction is "an extraordinary remedy" that is "never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc*. 555 U.S. 7, 24 (2008). Importantly, preliminary injunctions are, by their nature, subject to modification at any time. *See Auto Driveaway Franchise Sys., LLC v. Auto Driveaway Richmond, LLC*, 928 F.3d 670, 675 (7th Cir. 2019) ("[P]reliminary injunctions by their nature are not set in stone. If circumstances change, the parties are always free to return to the district court to ask for changes."). Courts consider the same factors for dissolving a preliminary injunction as those applied when granting or denying one in the first place. *Innovation Indus., LLC v. P'Ships Identified on Schedule A*, 807 F. Supp. 3d 844, 849 (N.D. Ill. 2025). "To obtain a preliminary injunction, a plaintiff must show that it is likely to succeed on the merits, and that traditional legal remedies would be inadequate, such that it would suffer irreparable harm without the injunction." *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 539 (7th Cir. 2021). "The two most important considerations are likelihood of success on the merits and irreparable harm." *Bevis v. City of Naperville*, 85 F.4th 1175, 1188 (7th Cir. 2023). Once the plaintiff has made this showing, the Court balances "the harm of denying an injunction to the plaintiff against the harm to the defendant of granting one." *Id.* The Court also considers the public interest. *Id.*

**A. Likelihood of Success on the Merits**

To prevail on a Lanham Act trademark infringement claim[5], a plaintiff must establish that (1) it has a protectable trademark; (2) the defendant is not authorized to use the mark; and (3) the defendant's use of the mark is likely to cause confusion among consumers. *Luxottica Grp. S.p.A. v. Light in the Box Ltd.*, 2016 WL 11940344, at *1 (N.D. Ill. 2016).

A plaintiff can allege that its mark is protectable in several ways. First, it can allege that the mark is registered in the USPTO's Principal Register. Registration of a mark in the Principal Register creates a rebuttable presumption of validity. *See* 15 U.S.C. § 1057(b) (noting "registration of a mark upon the principal register . . . shall be prima facie evidence of the validity of the registered mark"); *Georgia-Pac. Consumer Prods. LP v. Kimberly-Clark Corp.*, 647 F.3d 723, 727 (7th Cir. 2011). By contrast, a mark registered in the Supplemental Register is not entitled to this presumption of validity because it is only "capable" of becoming a trademark. 15 U.S.C. § 1094.

The preliminary injunction issued upon the Court's finding that Merrigo "owns valid and enforceable federally registered trademarks and copyrighted work." Dkt. # 24, at 3. However, OtGalk points out that Merrigo has now admitted that the '921 Mark was issued on the Supplemental Register and disclaims any reliance on the

[5] Merrigo also brings a false designation of origin claim under the Lanham Act and a claim under the Copyright Act. As a preliminary injunction only requires a likelihood of success on at least one claim, *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1096 (7th Cir. 2008), *abrogated on other grounds by Nyken v. Holder*, 556 U.S. 418, 434 (2009), the Court does not reach those claims.

Section 1057(b) presumption of validity as to that registration. OtGalk further argues that the conduct underlying the Court's likelihood of success finding occurred predominantly during a period when neither of Merrigo's trademark registrations enjoyed the presumption of validity, given that the '031 Mark was not issued until September 30, 2025. But Merrigo's complaint clearly alleges ongoing infringement of a mark that is entitled to the presumption of validity, and Merrigo has not authorized OtGalk to use its trademarks.

As for the likelihood of confusion element, the Seventh Circuit employs a seven factor test to determine whether consumers are likely to be confused: "(1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree and care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any actual confusion; and (7) the intent of the defendant to 'palm off' his product as that of another." *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). No single factor is dispositive, and courts may assign varying weight to each of the factors depending on the facts presented. *Id.* In its motion to dissolve the preliminary injunction, OtGalk does not engage with any of these factors and has therefore waived any argument that these factors were not satisfied for purposes of the instant motion.

Instead, OtGalk argues that Merrigo's likelihood of success on the merits is foreclosed by *res judicata*, the one-satisfaction rule, judicial estoppel, election of

remedies, claim splitting, the Settlement Agreement, lack of copyright standing[6], and genericness. As discussed below, *see infra* at pp. 14–23, these arguments raise merits questions that are not resolved at this stage and do not defeat preliminary relief on this record. *See Beijing iQIYI Sci. & Tech. Co., Ltd. v. Individuals and Bus. Entities Identified on Schedule "A"*, 2026 WL 2240719, at *2 (S.D.N.Y. 2026) ("A motion for a preliminary injunction is not a vehicle for merits dismissal."). Merrigo has demonstrated a likelihood of success on the merits.

**B. Irreparable Harm**

For preliminary injunctions based on Lanham Act trademark infringement claims, the plaintiff is "entitled to a rebuttable presumption of irreparable harm upon a finding . . . of likelihood of success on the merits." 15 U.S.C. § 1116(a); *AM Gen. Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 805 (7th Cir. 2002) (there is a "presumption that trademark dilution or infringement threatens irreparable injury for which there is no adequate remedy at law."); *Kraft Foods Grp. Brand LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735, 741 (7th Cir. 2013) ("irreparable harm is especially likely in a trademark case."). The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001) (collecting cases). This is because "[t]he most corrosive

[6] This argument is meritless. As noted above, the author and original claimant of record assigned the Copyrighted Work and all its rights to Merrigo years before this dispute arose and well before the First Action.

and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Re/Max*, 272 F.3d at 432. As Merrigo has demonstrated a likelihood of success on the merits of its trademark infringement claim, it is entitled to the presumption of irreparable harm here. Furthermore, Merrigo alleges continued infringement, which "causes diminished goodwill and brand confidence, damage to Merrigo's reputation, loss of exclusivity, and loss of future sales." Dkt. # 6, at 9.

OtGalk, however, argues Merrigo has no irreparable harm because Merrigo already received contractually agreed-upon $25,000 "reasonable estimation of damages" for what OtGalk characterizes as "the very same alleged breach." OtGalk further asserts that none of the nine accused listings are currently active; all were deactivated by Amazon upon entry of the TRO. So, OtGalk says, "to the extent the irreparable harm finding rested on the existence of active infringing listings, that factual premise no longer obtains." Dkt. # 43, at 9.

The Court agrees with Merrigo that OtGalk's argument that the First Action's contract award eliminates irreparable harm "conflates a backward-looking contract remedy with the forward-looking harm of ongoing infringement." Dkt. # 40, at 11. OtGalk's payment for a past breach does nothing to remedy continuing consumer confusion or the continuing dilution of Merrigo's exclusivity going forward. And "a bare promise by a party during litigation to discontinue past or ongoing misconduct 'does not justify denial of injunctive relief, since such unilateral action hardly suffices

to ensure that the party will not, in the future, reverse course and resume its challenged activities.'" *Bose Corp. v. The P'ships Identified on Schedule A*, 2026 WL 2364450, at *4 (N.D. Ill. 2026) (quoting *3M Co. v. CovCare, Inc.*, 537 F. Supp. 3d 385, 404 (E.D.N.Y. 2021)). Given OtGalk's post-settlement infringement and the ease with which OtGalk "could restore its prior Amazon listings—and how easily any affiliated entity could create new ones—there is a reasonable basis to conclude that infringement may resume." *Id.*

OtGalk also points to Merrigo's delay in bringing suit, arguing Merrigo "could have identified the nine accused ASINs during its 2024 pre-suit investigation of OtGalk's storefront," yet Merrigo "elected to plead only six in the First Action and waited until this 2026 action to seek injunctive relief as to the remaining nine." Dkt. # 43, at 9. True, a lengthy delay in seeking relief can call into question "how urgent the need for [preliminary] equitable relief really is." *Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 788 (7th Cir. 2011); *see also Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 903 (7th Cir. 2001) ("Delay in pursuing a preliminary injunction may raise questions regarding the plaintiff's claim that he or she will face irreparable harm if a preliminary injunction is not entered."); *Redbox Automated Retail, LLC v. Xpress Retail LLC*, 310 F. Supp. 3d 949, 953–54 (N.D. Ill. 2018). However, "the length of the delay, on its own, is not dispositive." *Life After Hate, Inc. v. Free Radicals Project, Inc.*, 410 F. Supp. 3d 891, 910 (N.D. Ill. 2019); *see also Chancey v. Ill. State Bd. of Elections*, 635 F. Supp. 3d 627, 643 (N.D. Ill. 2022) ("[D]elay is only one among several factors

to be considered; [the case law does] not support a general rule that irreparable injury cannot exist if the plaintiff delays in filing its motion for a preliminary injunction." (alteration in original) (citation omitted)).

Additionally, "[a] lengthy delay might not undermine a claim of irreparable harm if the delay was 'caused by the plaintiff's ignorance of the defendant's competing product or the plaintiff's making good faith efforts to investigate the alleged infringement.'" *Redbox Automated Retail*, 310 F. Supp. 3d at 953 (quoting *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995)). Merrigo asserts that when it conducted its pre-filing due diligence for the First Action, it was unable to locate any of the ASINs at issue in this case, despite OtGalk's contention that the listings were available and generating sales the entire time. *See USA-Halal Chamber of Commerce, Inc. v. Best Choice Meats, Inc.*, 402 F. Supp. 3d 427, 438–39 (N.D. Ill. 2019) ("Delay is also generally measured from the time the plaintiff discovers the infringement." (collecting cases)). The Court accepts Merrigo's assertion as true at this stage; this is a factual inquiry that needs to be explored in discovery. Additionally, the First Action also involved only one trademark. The '031 Mark was not registered until September 30, 2025, so claims based off that mark could not have been discovered or brought at the time the First Action was filed.

Merrigo has made an adequate showing of irreparable harm to sustain the preliminary injunction.

**C. Balance of Harms**

The next consideration—the balance of harms— also supports maintenance of the preliminary injunction. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Nirvana, L.L.C. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, 2022 WL 22886568, at *2 (N.D. Ill. 2022) (citing *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587–88 (D.D.C. 1994)). This is because a defendant "who adopts the mark of another for similar goods acts at his own peril, since he has no claim to the profits or advantages thereby derived." *Id.* (citing *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992)). The integrity of Merrigo's brand will be damaged if OtGalk continues to sell products using the Succulent Marks.

OtGalk argues that the balance of equities and the public interest favor dissolution because the preliminary injunction currently restrains $69,874.50 of OtGalk's Amazon-held funds, which represents nearly triple the liquidated damages amount and fourteen times the $5,000 Merrigo received in the settlement of the First Action. Any concerns regarding the amount of assets restrained can be addressed by a reduction or modification of the asset restraint, if warranted.[7] Given this, the harm to OtGalk is not sufficient to outweigh the harm Merrigo would suffer absent the preliminary injunction. *See Bose*, 2026 WL 2364450, at *5.

[7] The asset restraint is the subject of a separate pending motion and will be addressed in a separate order. *See* Dkt. # 45.

**D. Public Interest**

Lastly, the Court finds that maintenance of the preliminary injunction serves the public interest. Merrigo has demonstrated a likelihood of confusion from OtGalk's use of Merrigo's marks, and the Court finds that the public interest would be served by an injunction to prevent such confusion. *Eli Lilly & Co. v. Nat. Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000) (finding that "the public interest is served by the injunction because enforcement of the trademark laws prevents consumer confusion.").

The public has an interest in maintaining the integrity of trademark laws. *See Lettuce Entertain You Enters., Inc. v. Leila Sophia AR, LLC*, 703 F. Supp. 2d 777, 791 (N.D. Ill. 2010) ("Enforcement of trademark law serves the public interest by reducing consumer confusion."); *see also Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 193 (1985) ("Because trademarks desirably promote competition and the maintenance of product quality, Congress determined that a sound public policy requires that trademarks should receive nationally the greatest protection that can be given them." (quotation omitted)); *Stahly, Inc. v. M.H. Jacobs Co.*, 183 F.2d 914, 917 (7th Cir. 1950) ("It must be remembered that the trade-mark laws . . . are concerned not alone with the protection of a property right existing in an individual, but also with the protection of the public from fraud and deceit."). "The public also has an interest in ensuring that those whose trademark registrations are reviewed and approved by the USPTO receive the protection that registration confers." *Zhang v. UAB Ekomlita*, 2023 WL 2867798, at *13 (N.D. Ill. 2023).

For all of these reasons, OtGalk's motion to dissolve the preliminary injunction is denied.

## II. Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotes omitted). "This means that the complaint must offer factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Farhan v. 2715 NMA LLC*, 161 F.4th 475, 482 (7th Cir. 2025) (cleaned up). The Court will accept "well-pleaded facts in the complaint as true and draw reasonable inferences in plaintiffs' favor—but [will] not presume the truth of legal conclusions and conclusory allegations." *Cielak v. Nicolet Union High Sch. Dist.*, 112 F.4th 472, 475 (7th Cir. 2024). For these reasons, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Orr v. Shicker*, 147 F.4th 734, 741 (7th Cir. 2025) (quoting *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 751 (7th Cir. 2021)).

OtGalk argues Merrigo's claims in this action are barred by *res judicata*, the one-satisfaction rule, judicial estoppel, the doctrine of election of remedies, and the terms of the settlement agreement. OtGalk further argues that Merrigo fails to state a viable

trademark claim under either registration, and that its copyright claim is overbroad on the face of the complaint.

**A. The Settlement Agreement**

At the outset, the Court declines to reach OtGalk's argument that Merrigo's claims are barred by the parties' settlement agreement. The terms of the settlement agreement and the language of the release in the settlement agreement are crucial to such a determination, and the settlement agreement is not part of the record before the Court. It's possible that the parties intended for the settlement agreement to resolve all past and future claims, for releases often are "carefully worded as to bring within their sway *all* present and future claims whether known or unknown." *Krilich v. Am. Nat'l Bank & Tr. Co. of Chi.*, 334 Ill. App. 3d 563, 579 (2002) (emphasis in original) (O'Malley, J., specially concurring in part and dissenting in part). But, again, without the full settlement agreement, the Court cannot know the scope of the release.

**B. *Res Judicata***

*Res judicata*, also known as claim preclusion, prohibits parties from relitigating issues that were decided in a prior lawsuit, as well as any issues that could have been raised in the previous lawsuit. *See Perkins v. Bd. of Trs.*, 116 F.3d 235, 236–37 (7th Cir. 1997) ("[T]he function of res judicata is to require the joinder of all legal challenges to a wrong, and all claims for relief arising out of those events, without compelling the joinder of claims arising from separate wrongs."). On the other hand, though, traditional principles of preclusion allow additional litigation if some "new wrong"

occurs. *Supporters to Oppose Pollution, Inc. v. Heritage Grp.*, 973 F.2d 1320, 1326 (7th Cir. 1992); *see also Ross ex rel. Ross v. Bd. of Educ. of Twp. High Sch. Dist. 211*, 486 F.3d 279, 283 (7th Cir. 2007) ("Because the function of res judicata is to require the joinder of all legal challenges to a wrong, and all claims for relief arising out of those events, . . . claims based on the same, or nearly the same, factual allegations must be joined. . . . But if the supposedly wrongful events are separated by time and function, multiple suits are permissible (even though not desirable).")

*Res judicata*, however, is an affirmative defense, and affirmative defenses are not well-suited for motions to dismiss because they "typically turn on facts not before the court at that stage in the proceedings." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). Consequently, dismissing a case on affirmative defense grounds is appropriate "*only* when the factual allegations in the complaint unambiguously establish all the elements of the defense." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016). The proper procedure is to raise the defense and then move for judgment on the pleadings or summary judgment. *See Sapp v. Foxx*, 106 F.4th 660, 664 (7th Cir. 2024).

OtGalk argues that every accused listing in this case was offered for sale, and was actively generating customer orders, on OtGalk's public Amazon storefront throughout 2024, six to twelve months before Merrigo filed the First Action. In other words, OtGalk contends, these nine accused ASINs could have and should have been

asserted in the First Action.[8] OtGalk also says Merrigo "cannot escape preclusion by adding a new legal theory (copyright) to the same operative facts (OtGalk's sale of succulent-shaped pillows under SUCCULENT-marked listings) that were already at issue in the First Action." Dkt. # 31, at 9.

Merrigo, in response, claims that this action "targets new, post-settlement, post-injunction infringement: new Amazon ASINs, continued sales after the First Action's November 20, 2025 liquidated damages order, and re-styled listings designed to remove the word "SUCCULENT" from consumer facing titles while continuing to exploit" Merrigo's mark and copyrighted design. Dkt. # 41, at 2. Merrigo thus appears to concede that any claims arising out of the '921 Mark that could have been asserted in the First Action are barred here, and this is likely also true with any copyright claims predating the First Action; however, such a conclusion based on the affirmative defense of *res judicata* would be inappropriate at this stage.

Additionally, as a general principle, claims based on post-settlement infringement are not barred by *res judicata*. Furthermore, "[a] continuing course of conduct by a defendant, even if related to conduct complained of in an earlier suit, generally creates a separate cause of action." *Green v. Ill. Dep't of Transp.*, 609 F. Supp. 1021, 1024 (N.D. Ill. 1985) (citing *Lawlor v. National Screen Service Corp.,* 349 U.S. 322, 328–29 (1955) (continuing antitrust violations)). In other words, if later

[8] Again, Merrigo asserts that when it conducted its pre-filing due diligence for the First Action, it was unable to locate any of the ASINs at issue in this case, despite OtGalk's contention that the listings were generating sales the entire time.

conduct can support a cause of action on its own, that action would not be barred by *res judicata.* "The contrary conclusion — that [Merrigo] is precluded from bringing suit for alleged *new* trademark violations because the parties previously settled a suit over earlier, similar conduct — violates basic claim preclusion principles." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 503 (2d Cir. 2014). Consider the hypothetical posed by the Second Circuit in *TechnoMarine*:

> Assume that a plaintiff sues a defendant for trademark infringement occurring from 2010 to 2012. After trial, the court grants the plaintiff judgment and money damages. Two years following this judgment, in 2014, the defendant again infringes upon the same trademark, and in a similar way. Under [the defendant's] reasoning, claim preclusion would prohibit the plaintiff from suing again. The earlier judgment against the defendant — determining that it violated plaintiff's trademark rights from 2010 to 2012 — would in effect immunize the defendant against all suits concerning infringements of the same trademark in a similar way. This is not the law of claim preclusion.

*Id.* Not only does Merrigo's complaint allege ongoing infringement, this case also involves the '031 Mark, which was registered on September 30, 2025. Any claims of infringement of that mark could not have been brought at the time the First Action was filed. The Court declines to dismiss Merrigo's claims at this time on the basis of the affirmative defense of *res judicata*. OtGalk may renew its arguments at summary judgment.

**C. The One-Satisfaction Rule, Judicial Estoppel, and Election of Remedies**

Under the one-satisfaction rule, a plaintiff may not recover twice for the same loss. OtGalk argues that the conduct Merrigo "now asserts in this action, sales of pre-

existing physical inventory of the nine ASINs bearing 'SUCCULENT' on the product label, is the same conduct that Merrigo invoked in the First Action's enforcement proceeding to obtain the $25,000 liquidated-damages award." Dkt. # 43, at 8. This position ignores Merrigo's allegations of *ongoing* infringement.

OtGalk's judicial estoppel argument fares no better at this stage of the case. Judicial estoppel requires a clearly inconsistent position that was accepted by a prior court. *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001). OtGalk argues that Merrigo successfully argued in the First Action that the parties' $25,000 liquidated damages figure was "a reasonable forecast of potential harm" and "not a penalty." Dkt. # 31, at 11. Yet in this case, Merrigo seeks statutory damages of up to $200,000 per work under the Lanham Act and up to $150,000 per work under the Copyright Act. The Court does not find this to be a clearly inconsistent position based on the record before it, especially given that this case involves separate, later infringement.

The Court also agrees with Merrigo that OtGalk's election of remedies argument fails for the same reason. Contract damages and statutory damages or injunctive relief address separate wrongful acts: the breach of obligations under the settlement agreement, and later acts of infringement.

**D. Trademark Claims**

OtGalk alternatively argues Merrigo's trademark claims fail because the use is statutorily-protected descriptive fair use: "the term 'succulent' appears on the packaging as a descriptive English noun for the depicted plant species, not as a source

identifier." Dkt. # 31, at 15. Additionally, OtGalk argues that "succulent" is generic as applied to plush pillows shaped like succulent plaints, and a generic or merely descriptive term without secondary meaning cannot be infringed.

As an initial matter, most judges in this district treat fair use[9] as an affirmative defense. *See Bose*, 2026 WL 1121908, at *4 (collecting cases). Moreover, OtGalk does not expand upon its fair use argument, and it is not the Court's job to do the research and make the argument for OtGalk. *See McWilliams v. McWilliams*, 2006 WL 3775952, at *1 (N.D. Ill. 2006) ("Underinclusive and skeletal presentations impermissibly shift the responsibility to the court to do the lawyer's work and to explicate the arguments that the briefs have left undeveloped. . . .[S]uch presentations sap the time of judges, forcing parties with comprehensively briefed disputes to wait in a longer queue and condemning them to receive less judicial attention when their cases finally are heard[.]"). The argument is deemed waived and the Court will not address it further.

As for OtGalk's argument that "succulent" is a generic descriptive term, "[w]hether a mark is entitled to protection depends upon where it falls on a spectrum of increasing distinctiveness from (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful." *Ill. Tamale Co.*, 164 F.4th at 656. Whereas suggestive,

---

[9] "A defendant in a trademark infringement case may invoke the 'fair use' defense by demonstrating that (1) it used the phrase at issue in a non-trademark capacity, (2) the phrase is descriptive of its goods and services, and (3) it used the phrase 'fairly and in good faith' only to describe its goods." *Ill. Tamale Co., Inc. v. LC Trademarks, Inc.*, 164 F.4th 648, 660 (7th Cir. 2026) (citations omitted).

arbitrary, and fanciful terms are inherently distinctive and therefore are automatically afforded trademark protection, terms that are generic or descriptive of the products or services being sold generally cannot be registered. *SportFuel, Inc. v. PepsiCo, Inc.*, 932 F.3d 589, 598–99 (7th Cir. 2019); *see also Ill. Tamale Co.*, 164 F.4th at 656 ("A trademark infringement action must fail if the mark is generic and will usually fail if the mark is descriptive."). However, "descriptive terms can *become* distinctive by acquiring a secondary meaning, that is, the mark has grown distinctly and uniquely associated with the original seller." *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 420 (7th Cir. 2019) (internal quotation marks omitted); *see also Ill. Tamale Co.*, 164 F.4th at 656 ("Secondary meaning attaches to marks that have achieved significance in the minds of the public as identifying the applicant's goods or services." (cleaned up)). A party can prove secondary meaning "through direct consumer testimony, consumer surveys, length and manner of use, amount and manner of advertising, volume of sales, place in the market, and evidence of intentional copying." *Uncommon, LLC*, 926 F.3d at 424 (citing *Platinum Home Mortg. Corp. v. Platinum Fin. Grp., Inc.*, 149 F.3d 722, 728 (7th Cir. 1998)).

Because the '031 Mark is registered on the primary register, Merrigo is afforded "one of two presumptions: (1) that [its] registered trademark is not merely descriptive or generic; or (2) that if descriptive, the mark is accorded secondary meaning."[10]

[10] The '921 Mark, however, is not entitled to the same presumption.

*Packman v. Chi. Trib. Co.*, 267 F.3d 628, 638 (7th Cir. 2001). These presumptions are rebuttable, however, and "evaporate[] as soon as evidence of invalidity is presented." *Ill. Tamale Co.*, 164 F.4th at 656 (internal quotation marks omitted). "Effectively, the presumption functions to shift the burden of production to the alleged infringer." *Shenzhen Wanfan Tech. Co. v. Orbital Structures Pty Ltd.*, 2026 WL 2859439, at *3 (N.D. Ill. Sep. 22, 2026) (citing *Custom Vehicles, Inc. v. Forest River, Inc.*, 476 F.3d 481, 486 (7th Cir. 2007)).

Given that whether a product has acquired secondary meaning is a question of fact, *Uncommon, LLC*, 926 F.3d at 424, and considering Merrigo's allegations supporting distinctiveness and acquired secondary meaning, "including continuous use, thousands of five-star reviews, significant consumer recognition, and unsolicited national editorial coverage," Dkt. # 41, at 9, the Court finds that Merrigo's claims survive OtGalk's motion to dismiss. OtGalk is free to raise these arguments at summary judgment on a more robust factual record.

**E. Copyright Claim**

Lastly, OtGalk argues that Merrigo's copyright claim is facially implausible as to non-succulent accused products. To state a claim for copyright infringement, Merrigo must show: (1) "ownership of a valid copyright"; and (2) "unauthorized copying" of the copyrighted work's "original" elements. *Peters v. West*, 692 F.3d 629, 632 (7th Cir. 2012). The owner of a copyright may obtain a certificate of copyright, "which is *prima facie* evidence of its validity." *JCW Investments, Inc. v. Novelty, Inc.*,

482 F.3d 910, 915 (7th Cir. 2007) (citations omitted). Merrigo has provided a certificate of copyright. "Copying may be proven by direct evidence, or it may be inferred 'where the defendant had access to the copyrighted work and the accused work is substantially similar to the copyrighted work.'" *Innovation Indus., LLC v. P'ships Identified on Schedule A*, 821 F. Supp. 3d 954, 957 (N.D. Ill. 2026) (quoting *Susan Wakeen Doll Col., Inc. v. Ashton Drake Galleries*, 272 F.3d 441, 450 (7th Cir. 2001)). A work is substantially similar if it "permit[s] an inference that the defendant actually did copy the original." *Peters*, 692 F.3d at 633.

To determine if two works are substantially similar, courts ask "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value." *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1101 (7th Cir. 2017) (citation omitted). "It is axiomatic that copyrights protect the expression of ideas but not the ideas themselves." *Gentieu v. Tony Stone Imigages/Chicago, Inc.*, 255 F. Supp. 2d 838, 848 (N.D. Ill. 2003). "[O]riginality is the sine qua non of copyright, so that protection extends only to an author's *original* expression of an idea." *Id.* (emphasis in original). Likewise, "common words and phrases" receive no protection. *UIRC–GSA Holdings Inc. v. William Blair & Co., LLC*, 2017 WL 1163864, at *3 (N.D. Ill. 2017) (citing *Peters*, 692 F.3d at 635–36).

OtGalk argues at least one accused ASIN (B0B1Q5R5BJ), a "single-leaf-shaped" pillow, fails the "substantially similar" test. Merrigo responds that the complaint states a plausible copyright claim because it pleads protectable sculptural elements, including "the layered radial arrangement of padded petal elements, clustered central rosette, dimensional padded leaf forms arranged in concentric tiers, and the overall three-dimensional configuration." Dkt. # 41, at 11. The Court agrees with OtGalk that the leaf-shaped pillow shares none of the defining sculptural elements Merrigo describes and thus "substantial similarity" is lacking. Merrigo's copyright infringement claim based on this listing is dismissed. The other listings present a closer call, so those claims may proceed, for now.

**CONCLUSION**

For the foregoing reasons, the Court denies OtGalk's motion to dissolve the preliminary injunction [35] and denies OtGalk's motion to dismiss [30]. A joint status report regarding the progress of the case and possibility of settlement is due on 10/29/2026.

It is so ordered.

Charles P. Kocoras
Charles P. Kocoras
United States District Judge

Date: October 16, 2026